PEDRO, CARMEN LUZ and CARMEN ELENA MALDONADO, represented by their father with *patria potestas* LUCIANO MALDONADO, Appellants, *v.* THE INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondents, and THE STATE INSURANCE FUND, Insurer and Intervener.

No. 207. Argued January 27, 1941.—Decided February 10, 1941.

*Ismael Soldevila* for appellants. *George A. Malcolm, Attorney General, E. de Aldrey, Assistant Attorney General,* and *Víctor J. Vidal González* and *G. Atiles Moréu,* (the last two for the State Insurance Fund) for the intervener.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

Petitioners, grandchildren of Agapito Rodríguez, alleging that they depended upon him for their maintenance, filed a petition for a writ of review against the decision of the Industrial Commission of Puerto Rico of August 6, 1940, which denied them compensation because the death of said workman was not caused by an accident in the course of the employment but instead by the illnesses which he suffered.

The workman was seventy years of age and death came upon him while he was engaged in the occupation to which during the last ten or fifteen years of his life he had devoted himself, that is, while he was occupied in the clearing of ditches.

On the 8th of August, 1937, the workman was employed by the foreman, Miguel Renta, to clear a ditch in the Florida Plantation within the Municipality of Salinas. According to the testimony of Renta, given at the public hearing held in San Juan before Commissioner Paz Granela on the 4th of December, 1939, the workman began to work at 7:00 o'clock in the morning, Renta having asked him to try to finish the work during the day and about 8 o'clock in the morning the same foreman went to the place where the laborer was working and not seeing him, called him, but as the laborer did not answer, he thought that he had left his work which did not seem strange to him as he was working by the job and in that case he was not compelled to remain constantly at his work throughout the day. He left the place and did not hear of the laborer again until the following day when he was found dead in the same ditch where he was working, although as may be inferred from Renta's testimony, the body was not in the same place where the foreman had been the previous morning.

Dr. José A. Peña, a doctor resident in Salinas, who performed the autopsy of the laborer immediately after the dead man was discovered, testified that he died suddenly, and that his death was of a cardiovascular origin caused by hypertrophy of the heart, sclerosis of the coronary arteries, pulmonary tuberculosis and tuberculosis in other of his organs and schistosomiasis of the liver, an illness produced by a parasite called bilharzia. The expert witness furthermore testified that when he practiced the autopsy he tried to see if there were any objective symptoms which might indicate whether while he was still alive he had some cardiac decompensation but there was no sign of an edema, nor of humidity in the lungs, nor of congestion in the liver or spleen, all of which led him to the conclusion that while the laborer was working, he did not suffer any cardiac insufficiency. In other words, the expert arrived at the conclusion that death was caused by the illness the laborer was suffering and not because of any unusual event as appellants claim. When questioned by the Attorney of the State Insurance Fund, he testified that as the illnesses from which the workman suffered were chronic, there was the possibility that even if the workman died while making an unusual effort, there could not appear necessarily signs of decompensation; but that if the signs had appeared, then it could be positively affirmed that the death had come upon the workman while making an unusual effort.

Dr. Vadi, called as a witness by the attorney for the appellants, in his direct examination testified that he agreed with Dr. Peña, that the workman had died suddenly because of a heart illness, and when cross examined by the Attorney for the State Insurance Fund, he affirmed that due to the advanced stage of his illness, the workman could have died while resting in bed after eating.

The expert testimony did not exclude absolutely the more or less remote possibility that the workman's death had come about while making an extraordinary effort, but as Section

4 of the Law of Evidence (Code of Civil Procedure, Section 366), provides that "the law does not require demonstration; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty; because such proof is rarely possible. Moral certainty only is required, or that degree of proof which produces conviction in an unprejudiced mind." As the result we must conclude that in the absence of satisfactory evidence that there existed in reality such an extraordinary effort, the Industrial Commission did not err in weighing and giving credit to the expert testimony. See Section 11 of Act No. 45 of 1935, (1) page 250, as amended by Act No. 121 of 1940, page 728.

Let us now consider the evidence in regard to the alleged extraordinary effort. This evidence consisted exclusively of the testimony of the foreman Miguel Renta. This witness stated at the public hearing held on December 4, 1939, that he went to the place where the laborer was working during the morning of that day at eight o'clock and did not find him as we already know, and during his testimony he said that the quantity of work done by the laborer represented about four hours of work, from which fact appellants' attorney infers that if the laborer began to work at seven o'clock in the morning and one hour later had performed the task which required four hours to execute, he had necessarily to make an extraordinary effort in order to excel himself in the way he did.

In our opinion, the Industrial Commission did not err when it discarded completely the theory of an "extraordinary effort", since such a theory, although not physically impossible, is, to say the least, incredible. It is not possible to believe that a man sixty years of age who for a period of ten or fifteen years has been suffering of hypertrophy of the heart, sclerosis of the coronary arteries, pulmonary tuberculosis and tuberculosis in other organs of his body and schistosomiasis of the liver could, through an extraordinary continued effort performed during a period of one or two and a half

hours, execute the physical work which the normal man would take four hours to do. It is possible that a man in the same physical condition as the workman in the instant case would try to execute a momentary effort and die as the result of the same; but to affirm that a man in such a physical condition could execute a continued effort of the magnitude indicated above, is, as we have said before, if not physically impossible, at least so incredible that neither the Industrial Commission nor anybody who could analyze the facts dispassionately and free of prejudice, could give any credit to it.

Furthermore, the testimony of Renta with respect to the time when he went to the place where the laborer was working, was challenged successfully through his own testimony given on the 11th of August, 1937, in the Florida Plantation, only three days after the workman's death when the facts were still fresh in his memory and when perhaps there did not exist yet any hope of obtaining a compensation. In his testimony of August 11, 1937, Renta stated that he went to the place where the laborer was working at 9:00 o'clock in the morning and he said nothing concerning the quantity of work done. At all events, the computation made by Renta was a mere opinion of his which the Commission was not compelled to follow, especially when we have seen that this opinion was inacceptable taking into consideration the age and the deplorable state of health of the laborer.

In our opinion, the Industrial Commission did not err in considering satisfactorily proven that the laborer Agapito Rodríguez died as the result of illnesses which he suffered and not because of an accident originating in any act inherent to his work.

For these reasons, the petition for a writ of review must, in our opinion, be dismissed and the decision of August 6, 1940, affirmed.